After appellant's clock starts, our current Deputy Ms. Cates has to leave the courtroom. I am going to be your timekeeper after that. Are you going to be able to come back? No. You're coming back. Okay. Well, if she's not back, I'm the timekeeper. When you're ready, appellant. May it please the Court, Mark Walters for Eat Right Food, I intend to reserve 3 minutes for rebuttal. Both latches and acquiescence require evidence that the defendant suffered some prejudice as a result of the delay. In this case, the District Court made no specific findings of any causal connection between the delay and the alleged prejudice suffered by Whole Foods. This may be regarded as a somewhat off-the-wall question, and maybe you won't know the answer, but I don't understand why latches applies to a damage-ness action in trademark. And I note that E-Systems v. Monitech, which is the kind of court case, begins, latches can bar recovery in trademark or name actions where injunction of relief is sought. So, do we have a Ninth Circuit case that applies latches in a trademark case rather than the state-adopted statute of limitations to a damages action? I am not aware of one, Your Honor, as I sit here today. And this is not an injunctive action anymore, right? It would be moot as an injunctive action. Your Honor, at the time, it certainly was not. I know. But now it's moot. I believe so, Your Honor. I believe that's correct. Well, go ahead. But I'm just mystified. Right. Well, with regard to whether the law requires a causal connection between the evidence of prejudice and the delay, the main argument by Whole Foods is it doesn't necessarily need to be a causal connection. Their main argument is that merely all they needed to do was show that they could have done something or that prejudice might have been avoided if E-Wright had filed suit sooner. But, of course, that devolves the defense into one where prejudice would be found wherever there is delay. And we do not think that that is the rule. And certainly the cases don't talk about that as being the rule. And in this particular case, the evidence of prejudice was offered at a very high level of generality. And, in fact, there were – what happened was is after remand following the first appeal, the district court called for supplemental briefing and a renewed motion for summary judgment from Whole Foods, then proceeded to a grant summary judgment on nearly the identical record that was found insufficient by this court to affirm the first appeal. The only difference, really, in the record between that appeal and this one is a two-page declaration from a Whole Foods employee. You could find the original version of that declaration in the record at 142 to 143. In opposition, we pointed out that that declaration repeated the same error that was found to require reversal in the first appeal, and that was it aggregated figures of prejudice for all of the alleged period of delay, which was 2010 through the end of 2012. And we pointed out in our opposition that, while the infringement didn't start until January 20th of 2010, the earliest point at which Whole Foods contends that Eat Right should have known of the infringement was March 2010. So the consideration of any prejudice, evidence of expectation-based prejudice in 2010 – How can that possibly matter? I mean, I understand that if you – when you get to the point that you actually have to prove the amount of prejudice, there would have to be clearer. But at this juncture, I mean, we can all say with some moral certainty that, in fact, if you want to know whether they were still opening stores and still giving training in this program, they were. So what difference does it make for this purpose? For this purpose, Your Honor, what difference does it make if – If the causation began in March or began in April or began in November? Well, because, Your Honor, I mean – Your first argument is they didn't prove causation. That's a different point. Right. But if you're going to say that they didn't – that the actual figures they put in don't cover precisely the right period, it's never going to – it's no never mind in terms of the question of whether they've adequately shown prejudice. Well, I guess it applies if the Court agrees for some reason that a causal connection isn't required because there were specific instructions from the previous panel on what the district court was to do in considering evidence of expectation-based prejudice. And those specific instructions were that the district court was not to consider any evidence that was outside of the period of delay. So there are – there's a dispute about when the period of delay started. According to Whole Foods, they contend that the period of delay started in early 2010. However, that was not found by the district court. And they make an argument that if this particular fact wasn't addressed specifically in the prior appeal, then it was the law of the case. And that's not correct. I have another background question. Okay. If this – a lot of your argument is that there shouldn't have been summary judgment because the judge was making findings. And the Ninth Circuit so found in the first go-round. And it does seem that some of what he said this time is the same thing they said wasn't the case before. So, all right. Let's assume that's true. So then what happens next? This issue doesn't go to a jury. Absolutely not, Your Honor. I think that – but because it is sufficiently related to the questions on which we do have a right to a jury, the cases require that we have a jury rendering first because there is an intertwining of these – so many facts that bear on the laches defense, these equitable cases, that will be found by the jury. And under Beacon Theaters and some other cases, the court is to take the lead from the jury on those particular findings. So, it's not as if we could have a bench trial on laches prior to having an infringement trial. There are intertwined questions here, particularly when the knowledge of the infringement – What case is that? Beacon Theaters, Your Honor. Or – Okay. Go ahead. Okay. So, our point there is that these issues are very intertwined, and this is not a point where we can have a separate trial on – What issues those are? So, those issues are, Your Honor, whether or not there was knowledge of the infringement during this time of delay. And there's significant evidence in this case that Whole Foods knew about this claim as early as October of 2011. They knew about the opposition proceeding as it was pending at the USPTO. So, and that goes to the idea of whether they deliberately infringed. And if the jury finds willful infringement, that certainly would carry over to the district courts. Willful infringement is a conclusion. That's not a fact. The fact is not disputed. Well – The fact you pointed to was the fact that they had the other proceeding going forward. Other issues – That's not – the jury's not going to have anything to say about that. Everybody understands that that's true. So, you just pointed to a jury legal conclusion. What other facts might be at issue? Well, the other facts that are going to be at issue in a trademark case, Your Honor, is the strength of the mark. And if the mark is particularly strong, as we contend it is, then that is going to be entitled to greater weight. And that's one of the e-systems factors that Judge Berzon cited. And that's a factor that's intertwined with the infringement analysis. So, I understand that that's part of the infringement analysis. How is that tied to the latches analysis? Well, it's tied to the latches analysis because it weighs on – it's one of the factors to be considered as to whether latches applies in any particular case. If there's a relatively weak mark, for example, if the defendant had lots of reasons to continue to use the mark, then that's something that ought to be considered because they had some fair uses that they needed to make of the mark. Well, that's something that ought to be considered in any kind of case for latches. So, this is one of the factors in addition to whether or not there is willful infringement. A case on point is the Dairy Queen case. I don't know – I didn't expect this to be part of the questioning, and I don't know if that is – it is cited, Your Honor, on page 38 of the blue brief. And I will turn to that. The underlying principle is clearly understood. That is to say, if you've got a jury for some things and a judge trial for other things coming out of the same case, Justice Black tells us that the jury goes first, and any factual determinations by the jury then are binding on the court. That's the law, Your Honor. I get that. Okay. I understand the principle. And, Your Honor, infringement is a question of fact, and there are issues that are intertwined. There is the knowledge on when they knew about it, and whether or they understood that they would be subject to a claim. That's all part of the infringement analysis as well, particularly when it comes to the infringement. So, Your Honor, when it comes to this defense, I think there was an abuse of discretion in the fact that the court didn't even consider the evidence that we were tied up in an opposition with a party that was closely affiliated with Whole Foods for a great period of this alleged delay. Now, the cases that consider evidence of this, the reasons they consider evidence of this is because there's a judicial interest in avoiding the duplicative of proceedings. And while there is an opposition proceeding going on in the case, the alleged infringer can't possibly believe that the plaintiff has abandoned the claim. These same reasons apply with equal force here against Whole Foods, and that should have been considered by the district court, but there's no evidence in the district court's opinion that that was even considered. We believe that was an abuse of discretion, and we also believe, Your Honor, that had the district court considered this evidence, that the delay period would have been substantially shortened, because what happened was after the rights in the mark were clarified at the USPTO, these settlement negotiations resumed, and they were mutual until about August of 2013, which is about three months before suit was actually filed. So how much of that so-called settlement negotiation is impermissible fact-finding on the part of the district judge, or is he just pointing out the facts of what happened and deciding whether or not that amounts to ongoing settlement? Meaning his view is that you were making offers, and they kept saying no. You kept saying, would you please buy my mark, and you kept saying no. He says that doesn't sound much like a settlement to me, and the fact of what you said and what they said in response, that's not disputed. Well, Your Honor, because it wasn't just a no. Your Honor, I'm going to cite the record here. After the opposition, so first of all, there's undisputed testimony from Ms. Douglas Clifford that she was in communication with Whole Foods in 2011. They said, hey, this is something you need to take up. The period from May 2013 forward. Okay, so let's focus on that. I want to direct your attention to the record at ER 567. That's an email basically to a principal at Whole Foods. She responds to it at 572 with nothing to indicate that they weren't going to consider this offer because the evidence in the record at 4-0. When was what you're talking about, and what did it say? Right. 572 is an email from Whole Foods that stated August 4th of 2013. That is when she said that we are not going to consider it. 567 is an email where Ms. Douglas Clifford writes to Ms. Betsy Foster and says, I had an encouraging conversation with Chris Graff, who was the outside counsel for Whole Foods. And again, this is upon, she had a conversation with Chris Graff, which is in the record as well, in her declaration supported in opposition to summary judgment. And she says that after the opposition was won, Chris Graff said, you know, you should submit a demand letter so we can talk about what might happen now that you've resolved this issue. That's earlier than the period I'm talking about, no? That is earlier, but it relates to it because she references her conversations with Chris Graff here in July 24th of 2013. And she says, I remain hopeful that a conscious capitalism outcome between all the relevant parties is still achievable. And then she responds. And on 569, on the 21st of June, she says, thank you for your note. So much is no longer with Whole Foods, but I remain in contact with Chris, whom I know you've spoken to. So there's no, at this point in time, the context is the opposition has been resolved. She had done this because Whole Foods said, pardon me? It was resolved a year and a half before. Pardon me, I'm sorry. It was resolved a year and a half before, is that correct? No, the opposition was not resolved until April of 2013. And at that point, there was a conversation between her and Mr. Graff. He said, submit a demand letter, which she did. Then she was in contact with someone at Whole Foods who says, yes, I know you've been in contact with Chris Graff. We'll consider this. And then I don't have the exact email right now off the tip of my fingers about where she says we're going to consider this, but I'll sit down and look for that. And then she wasn't told until August later on that, okay, now we're not interested in it. And that email is at 572. So, Your Honor, this is not a one-sided thing. They didn't file until December. I'm not sure about that. I think maybe it was trying to look for a lawyer at that point. They didn't file until December. Well, I thought you asked why they didn't file between August and December. Right, they filed December 3rd.  Let's hear from the other side, and we will give you a chance to respond. Thank you. Good afternoon, and may it please the Court. I'm Steve Moline for the Appellee's Whole Foods Market. Judge Berzon, if I understood your question, you asked whether there's any Ninth Circuit precedent for latches barring monetary relief in a trademark case. Was that correct? So the Grupo? Seems to assume it. Yeah, I think where the confusion may be is there's a lot of dispute in other circuits. All circuits agree that latches can bar monetary relief in trademark cases, but some say that because of the public interest, it shouldn't bar injunctive relief. The Ninth Circuit has clearly stated. Contrary to the origin of all this, which is that latches, it's equitable relief, but go ahead. That's correct. But in any event, your request for a case, Grupo 391 F3rd 1088 at – oh, I'm sorry. That was the wrong case. Miller is 454 F3rd 975 at 997. That says it's well established that latches bars both monetary and injunctive relief. I mean, it's all very weird. I mean, it strikes me as I don't know how the commercial world goes on with this extremely mushy standard. Well, I think the answer – Which doesn't seem to apply anywhere else. I mean, just because you're adopting a state statute of limitations is not a reason. State statute of limitations are adopted in federal statutes all the time, and they apply the way they apply, not by latches. Right. Well, the state statute of limitations is an analogous rule used to measure the length of the delay, and it does vary state to state. But you have to keep in mind there's no statute of limitations in trademark cases. I understand. There's no statute of limitations, federal statute of limitations for 1983 either. Right. Therefore, there's a borrowed state statute of limitations, which is borrowed. It is not a latches. But this is the world we're in. Fine. Go ahead. Right. So that's all the – as trademark lawyers, that's all we have. When a plaintiff unreasonably delays, we have to rely on the equitable doctrine of latches. I wanted to also mention that that Miller case cited JARO 304F3rd at 840. I think it's very clear. The Ninth Circuit – I'm going to assume it. It's just odd. Okay. Go ahead. Anyway, so when this court analyzed Chief Judge Martinez's first summary judgment decision in this case, it expressly affirmed his finding that plaintiff knew or should have known of the allegedly infringing conduct in 2010. Plaintiff delayed more than – Sometime in 2010, but it did not, although you say otherwise, say it was early in 2010. But I don't know that that matters. I would say that it expressly affirmed that they knew or should have known more than three years before the lawsuit, which was filed in December of 2013. I would also say that Judge Martinez originally found that they knew or should have known in late 2009 or early 2010. What the Ninth Circuit said last time is that because the program wasn't public until early 2010, she couldn't have known about it in 2009. So that was error that was identified, but that's the only error that was identified. This is the part that I had the hardest time with. The court said last time that the district court is to go on the understanding that, in fact, they were engaged in settlement negotiations. That's correct, Your Honor. He didn't do that, did he? He did it only for the purposes of the presumption. But then he said when he got to the question of whether or not there was a delay, he seemed to have abandoned that entirely. Well, I think he made very clear that he was analyzing the length of the delay and he was determining whether that was reasonable. And he took to heart this court's admonition that he had to consider – he had to accept her claim that she was trying to settle the case. Only for the purposes of the presumption. Well, I think it went beyond that. He said that that effectively rebuts the presumption, but then throughout he said accepting that she was trying to settle the case, her actions in trying to settle that case did not make her delay reasonable. So, yes, she was trying to settle, but at the same time they were one-sided settlement negotiations. They were not really reciprocated. She kept emailing and emailing without even waiting to get a response. Please buy my brand. Please buy my brand. And Judge Martinez found, yes, of course she was trying to settle, but any reasonable person in that situation would have realized that Whole Foods was not interested and would have pulled the trigger sooner on a lawsuit, especially a sophisticated businesswoman who is represented by competent counsel and knows that doctrines are running that are going to bar her claim. This court also said that, yes, it said you need to consider that the delay – that one reason for the delay was she was trying to settle the case, but even under that circumstance the district court could still determine that the delay was unreasonable. That's at 880 F. 3rd 1119. So, in our view, the Ninth Circuit provided a clear and detailed roadmap for analyzing the case on remand. The roadmap identified three course corrections that Judge Martinez needed to make. First is the point we're just talking about. Why it seems to me that he was operating inconsistently with the admission or the mandate in this court. For example, while the court certainly recognizes that plaintiffs sought to avoid litigation by offering to sell its brand to defendants during the same time frame, the communication from plaintiff also clearly demonstrates a desire to capitalize on defendants' efforts in its Eat Right America claim. As a result, the delay in filing suit had the effect of capitalizing on the value of defendants' labor by determining whether the infringing conduct would be profitable. Right, and I believe he cited Evergreen in that passage. I think it's perfectly plausible to say she was doing both. Yes, she was trying to settle her claim, but at the same time, she was not interested in resolving the case in actually pushing to a resolution. She was delaying and putting off filing. She was encouraging Whole Foods to continue using the mark during this entire period, and that had the effect of driving up the potential liability, which is a form of prejudice that's very well recognized by the Miller and Whitaker cases. Why aren't all those factors you mentioned factors for a jury to weigh? I don't believe they are, Your Honor. Why is this an uncontroverted facts case on that issue? I believe Judge Miller, I'm sorry, Judge Fletcher got it right in one of his first questions, and that is the facts are all established here. The correspondence is laid out very clearly for you to see. You can see about 10 emails from Ms. Douglas-Clifford for every response. But from the facts, you can draw competing inferences, I mean, like the reason for the delay. I mean, why did you pursue this, you know, settlement, right? You know, somebody says, well, it's fruitless. You're wasting your time. But I think the distinction there is the facts that would be in dispute are what she said, what the negotiations were, and what agreements came out. And what inferences you can draw from those. But the inferences that you can draw from those are within the sound discretion of the trial court. Oh, no, it's a question of fact. Isn't it a question of fact? You have to draw, on summary judgment, the inferences in favor of the party opposing summary judgment. The inferences for any factual disputes. But as— I think inferences that arise from any facts. Well, I think that the Beatty case, which Judge Fletcher actually wrote, N. Ray Beatty, 306 F. 3rd, 914, that— What was the name of that case? 2002, Your Honor. No memory of that case. Well, well— No, it wasn't, Your Honor. It was you. Whichever Judge Fletcher was, I'm sure it's a good case. Anyway, so there was, Your Honor, there was a dispute in the Ninth Circuit prior to that case about— there was some confusion about whether it's an abuse of discretion or, you know, these inferences that you draw. And that case says—here's a quote. Well, we here clarify that the appropriate standard of review on determination of whether Latches applies in a particular case is abuse of discretion. That's at page 921. I better read that opinion. What's the citation? We'll double-check and make sure it was you, Your Honor. Give me the citation, would you please? 306 F. 3rd, 914. Sounds like a really good opinion. And so Latches has been applied in the summary judgment context in a number of intellectual property cases. Just in our briefs— But you agree that this wouldn't go to a jury. Anyway, if it didn't—if it wasn't summary judgment, it would either go to a bench trial or it would go to a judicial determination after a jury trial. But it wouldn't be decided by the jury no matter what. The Latches question, you mean? I believe that's correct, Your Honor, that the jury would determine, yes, that's certainly an equitable remedy in the judge's discretion. But Latches is perfectly appropriate for summary judgment. I know there are a lot of cases where fact issues preclude it, but Ackerman, Evergreen, Grupo, Jarrow, Miller, Tillamook, and Whitaker all upheld summary judgment findings of Latches in intellectual property cases. Explain this to me because I am bothered by it. Mr. Walters said, and I think he's correct the way he reads the record, that, well, Judge Martinez granted summary judgment the second time based on virtually the same record on which he was reversed the first time. You know, almost nothing added except this little affidavit. And the reasons he gave were the same. Now, how can he do that? I think what you have to look at is what the reversal was based on. The reversal on Latches was truly based simply on the facts that, number one, the panel didn't believe that he sufficiently credited her testimony that she was trying to settle the case. Number two, he used the year 2009, and 2009 was clearly not proper. I mean, they were stronger than that. It said that, on remand, the court should reevaluate the evidence in light most favorable to the nonmoving party, i.e., as if ERF delayed filing suit because it was trying to settle its claim against homefoolers. It could still determine that the delay was unreasonable, but the court must proceed from the premise that ERF's account of why it waited to file suit is true. Right? So that seems to me to be different from what actually happened, which was a great deal of reliance on this notion that she was really trying to capitalize on the homefooler's use of the mark and that she was, at least for long periods of time, not trying to settle the suit. Your Honor, all we can do is read what Judge Martinez said about how he was accepting this claim. On page 7 of his second opinion, he says, specifically, the court accepts that Plaintiff was attempting to resolve her potential claims without litigation. As you mentioned, he talks about the presumption there, but he goes on to talk about all of… After he deals with the presumption, he starts over again, and after that, he's not accepting it anymore. Well, except that he's going through the entire history of the settlement negotiations between the two sides. The question here is not, did he believe that she was trying to settle? That's what the case got sent back for, is because he didn't credit her testimony that she was trying to settle. The question that this was remanded for is, did her accepting that she was trying to settle, did that make her delay reasonable? And the court said, and you could still find it's unreasonable, so we have to give Judge Martinez some discretion here to say, I accept that you were trying to settle, but the way you went about it was unreasonable, and no reasonable party would have kept pushing and pushing and refusing to take no for an answer and yet still not suing. That isn't what he said. He said she was trying to do other things. She was trying to capitalize on the mark, essentially, and sell her business. But I have another question. Okay. What about the causation question? The causation requirement, I presume you're talking about prejudice and the reliance? So prejudice is undisputedly an element required for latches and acquiescence. Some of the cases have stated that in terms of a reliance requirement. The main case that that started with is Danjack, and that's the case that our panel previously cited and said established the reliance requirement. If you look at what Danjack actually did, it's very clear that it's not a but-for reliance requirement. Danjack made a bunch of investments in James Bond movies. The other side complained about it vociferously but never filed lawsuit until they counterclaimed. And there's no evidence in Danjack that the defendant would have stopped making James Bond films. And, in fact, I think it's ludicrous to suggest that he would have. Just to boil it down, is that there is no such requirement, not that you have made it on the record? I believe there is no such requirement that you show but-for reliance. I believe prejudice can be shown in many ways and was shown in multiple cases. No requirement for but-for reliance. Why are you saying but-for? Your Honor, I'm out of time. I'd be happy to answer your question. Yeah, no, that's okay. The reason that I say but- We've been going over all that. Right, right, Your Honor. So I think it's really important to establish what we mean when we say reliance. That's what I'm driving at. Right. So reliance in the cases that is sufficient to show prejudice has been shown in cases like Grupo by continuing to build a business and opening a new store, in Whitaker and Miller by incurring potential liability, and in Jarrow because the defendant could have invested resources differently. None of those cases add a requirement the defendant prove what it would have done if plaintiff had complained sooner. And the reason I say but-for reliance can't be the test. No, it's implicit in that. That is to say I did this because of what you did. It's implicit that I didn't do something else. I think it's implicit that that may have been one factor in why I did this. But the but-for test that plaintiff is trying to establish here is that we have to show that if she would have sued us earlier, we would have immediately rolled over and not fought the case. And I think that's a very bad policy. I'm much more interested in sort of, I guess, semantically talking about what kind of reliance we're talking about. And I'll ask the other side, okay, what is the reliance interest that you're pointing to? Okay. Can I ask one last question? Sure. You said they're relying on the Dagen case or something like that. But there was a case called Cellar Agency in 2010. It says with respect to the prejudice, the third prong, we note that in the case of Latches, undue prejudice requires at least some reliance on the absence of a lawsuit. Isn't that pretty clear? That's right, but doesn't that, I believe that cites Dan Jack for that proposition. What's the difference? First of all, no, it doesn't. And second of all, so what it cites? It says what it says. It says what it says, but it never applies the test. It establishes this new test for acquiescence, but it doesn't actually determine whether prejudice occurred in that case. And there are numerous cases finding prejudice without requiring the defendant to prove exactly what it did. All those cases that I just mentioned are very good examples. Okay. Thank you. Thank you. Would you put two minutes on the clock, please? Thanks. Judge Fletcher, I want to address your question about what kind of reliance interest is required, and I can do it in the context of the- I don't want to talk in the abstract what was the reliance. I mean, what are the facts here? Well, the facts here is that there really wasn't, because, you know, you've got a situation where they had an obligation to use the mark based on a 2009 licensing agreement, which they did, and then they went into some negotiations with this party, this licensee, in 2011. They purchased that asset, and then they agreed in that asset purchase agreement to stop using the mark. So it's not like they built the business around this. This is not a Grupo situation. In Grupo, that name, Gigante, was used for the entire store, and the defendant opened a second store, and importantly, without knowledge of the infringement claim. So there was no question in the Grupo case that every single-that whole activity of opening the store was connected to the name Gigante, because that was the name of the entire store. Compare that evidence to what we have here, general numbers of salaries for employees who did all sorts of other things, other than work on this infringement claim, or, you know, invest or put Whole Foods deeper in the hole, if you want to look at it that way. You have real generalized evidence of prejudice in contrast to Grupo, where it was entirely connected to the mark. Okay. Secondly. I got the point on prejudice. Okay. The Volt case. I don't understand this. How could you ever-you took the sentence that I just read before literally. How do you ever demonstrate that there was reliance on the absence of a lawsuit? Do you have to have somebody say, you know, look at that, they're not suing us, so I'm going to go to X? Well, a great example is the Volt case cited on page six of our reply brief. That was a case where the plaintiff challenged the correctness of a hearing based on procedural defects in the hearing, and the hearing occurred seven years ago. And the court said, no, you can't do that, because you knew about those procedural defects, and the defendants in that particular case had a right, they had an interest to rely on the correctness of that hearing, because there was a moment of speak now. That proves the point, which is, did they have to come forward and demonstrate that they sat around the room and said, oh, because she's not suing us, we're going to do X? No, I don't believe that they had to do that. How do you prove reliance on the absence of a lawsuit? Well, you have to prove that. You're supposed to assume it, that lives go on, which is why you have limitations periods, which is why having this whole latches thing is so bizarre. But how do you prove that somebody did something or changed their position because of the absence of a lawsuit? Very importantly, you prove that they had no idea that there was going to be a claim of infringement. That's certainly not our case. And for a vast majority of this evidence that they've submitted. It isn't the claim that satisfies latches, it's the lawsuit. I'm sorry, Your Honor? It's the lawsuit that cuts off the latches, not the claim, right? Right. You're right. That's how you measure the period of delay, but that's how you measure as the first step, how long was the delay. However, when you want to see whether or not there was prejudice as a result of the infringement, you have to consider things like did they know about it? Did they make decisions? I mean, because what you have here in this case, if they know about the infringement claim and then they spend money on the infringement, they're essentially betting that there would be no claim. So you're not really finding prejudice. You're sort of penalizing the merits of the lawsuit at that point. Okay. Thank you. Both sides for their arguments. Eat Right Foods Limited versus Whole Foods Market Services. That all submitted for decision. That completes the afternoon. Sorry you had to come at the end. It was a long wait. Thank you, Your Honor. Thank you, Your Honor.
judges: Tashima, W. Fletcher, Berzon